UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DAVID SCOTT,

       Plaintiff,                              Civil Action No. 13-12781
                                                Honorable Linda V. Parker
                                                Magistrate Judge David R. Grand

v.

MARILYN BRADFORD, WILLIAM
MOLLISON, CHRISTOPHER CORRIVEAU,
MARTIN BAY, D. BISHOP, C. KOBEL,
L. LACEY, and T. BRANDERVER,

       Defendants.
_____/

**REPORT AND RECOMMENDATION TO GRANT DEFENDANT
BRADFORD'S MOTION FOR JUDGMENT ON THE PLEADINGS
[23], DEFENDANT CORRIVEAU'S MOTION TO DISMISS [25], AND
DEFENDANT MOLLISON'S MOTION FOR JUDGMENT ON THE PLEADINGS [30]**

**I.    RECOMMENDATION**

Before the Court for a report and recommendation are Defendant Marilyn Bradford's Motion for Judgment on the Pleadings (Doc. #23), Defendant Christopher Corriveau's Motion to Dismiss (Doc. #25), and Defendant William Mollison's Motion for Judgment on the Pleadings (Doc. #30). For the reasons set forth below, IT IS RECOMMENDED that all three of these motions be GRANTED.

**II.    REPORT**

    **A.    Background**

On June 24, 2013, Plaintiff David Scott filed a complaint against the following defendants: Marilyn Bradford, William Mollison, Christopher Corriveau, Martin Bay, D. Bishop, "Oakland County Deputy," and "Howell Police Officer." (Doc. #1). In his complaint, Scott asserted claims for retaliation, false imprisonment, illegal search and seizure, conspiracy,

and "cruel and unusual punishment." (*Id.*). On December 10, 2013, Scott filed a first amended complaint, which includes no new factual allegations but merely identifies the previously-unnamed "Oakland County Deputy" and "Howell Police Officer" defendants as C. Kobel, L. Lacey, and T. Branderver. (Doc. #11).

In his amended complaint, Scott indicates that, "There is a history of litigation by Plaintiff taken against retired circuit court judge Daniel Burress, Brighton attorney Brian Lavan and others associated with same.[1] (*Id.* at ¶13). *See, e.g., Scott v. Burress, et al.*, 06-22340 (Livingston County Circuit Court 2006) (dismissed); *Scott v. Burress, et al.*, 06-13916 (E.D. Mich. 2006) (dismissed); *Scott v. Cremonte, et al.*, 09-10916 (E.D. Mich. 2009) (dismissed by the District Court and the Sixth Circuit); *Scott v. Burress, et al.*, 09-11807 (E.D. Mich. 2009) (dismissed); *Scott v. Burress, et al.*, 10-14937 (E.D. Mich. 2010) (dismissed by the District Court and the Sixth Circuit). Scott asserts that these lawsuits have resulted in the dissemination of false and malicious accusations that he is a dangerous and violent individual who intends to kill Judge Burress. (Doc. #11 at ¶¶14-16). In his amended complaint, Scott describes eight incidents in which various defendants and third parties allegedly subjected him to mistreatment based on these accusations. (*Id.* at ¶18). At issue in the pending motions are only the incidents that allegedly occurred on June 17, 2010 (*Id.* at ¶¶25-26) and June 21, 2010 (*Id.* at ¶¶27-28). These incidents will be discussed in greater detail below.

Between December 27, 2013, and January 15, 2014, Bradford, Corriveau, and Mollison

---

[1] As Bradford points out in her motion, Scott is extremely litigious and has a lengthy history of filing lawsuits against numerous individuals and agencies. In 1997, a circuit court judge enjoined Scott from filing any lawsuits in any state circuit court or court of claims without seeking and obtaining permission "due to [his] repeated and consistent filing of frivolous suits …." (Doc. #21 at Ex. 1). However, this injunction apparently has not deterred Scott from filing lawsuits in federal court: Bradford indicates in her motion that, between this Court and the Western District of Michigan, Scott has filed at least forty-seven lawsuits. (*Id.* at 10-11, n.1).

2

filed motions to dismiss and/or for judgment on the pleadings. (Docs. #23, 25, 30). On March 17, 2014, Scott filed a single response in opposition to these three dispositive motions. (Doc. #45). Bradford and Corriveau filed reply briefs in support of their motions. (Docs. #49, 51).

On June 25, 2013, this case was referred to the undersigned for all pretrial purposes. (Doc. #4). The Court finds that the facts and legal issues are adequately presented in the briefs and on the record and dispenses with oral argument pursuant to E.D. Mich. L.R. 7.1(f).

### B.      Standard of Review

A motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) tests a complaint's legal sufficiency.[2] "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). The plausibility standard "does not impose a probability requirement at the pleading stage; it simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence of illegal [conduct]." *Twombly*, 550 U.S. at 556. Put another way, the complaint's allegations "must do more than create speculation or suspicion of a legally cognizable cause of action; they must show *entitlement* to relief." *League of United Latin Am. Citizens v. Bredesen*, 500 F.3d 523, 527 (6th Cir. 2007) (emphasis in original) (citing *Twombly*, 550 U.S. at 555-56).

In deciding whether a plaintiff has set forth a "plausible" claim, the Court must accept the

---

[2] The standard of review applicable to a motion for judgment on the pleadings under Rule 12(c) is the same as that for a motion to dismiss under Rule 12(b)(6). *See Bell v. JP Morgan Chase Bank*, 2006 WL 1795096, at *1 (E.D. Mich. June 28, 2006) (citing *Ziegler v. IBP Hog Market, Inc.,* 249 F.3d 509, 511-12 (6th Cir. 2001)).

3

factual allegations in the complaint as true. *Id.*; *see also Erickson v. Pardus*, 551 U.S. 89, 94 (2007). That tenet, however, "is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to prevent a complaint from being dismissed on grounds that it fails to comport sufficiently with basic pleading requirements. *Iqbal*, 556 U.S. at 678; *see also Twombly*, 550 U.S. at 555; *Howard v. City of Girard, Ohio*, 346 F. App'x 49, 51 (6th Cir. 2009). Ultimately, "[d]etermining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679.

Pleadings filed by *pro se* litigants are entitled to a more liberal reading than would be afforded to formal pleadings drafted by lawyers. *See Thomas v. Eby*, 481 F.3d 434, 437 (6th Cir. 2007). Nonetheless, "[t]he leniency granted to pro se [litigants] ... is not boundless," *Martin v. Overton*, 391 F.3d 710, 714 (6th Cir. 2004), and "such complaints still must plead sufficient facts to show a redressable legal wrong has been committed." *Baker v. Salvation Army*, 2011 WL 1233200, at *3 (E.D. Mich. Mar. 30, 2011).

**C.  Analysis**

    *1.  The Specific Factual Allegations at Issue*

In his amended complaint, Scott implicates Defendant Marilyn Bradford, an assistant prosecutor for Livingston County, and Defendant William Mollison, an attorney, in only the incident that occurred on June 17, 2010. (Doc. #11 at ¶¶25-26). Specifically, Scott asserts that, on that date, during a hearing in a child protective proceeding that involved the minor children of Rachael Lopucki, Bradford and Mollison[3] maliciously and falsely stated that Bradford "is

---

[3] Mollison had been appointed as Lawyer/Guardian Ad Litem for Lopucki's three minor children

'known to be a violent man, known to have violent threats to the legal community and judges in Livingston county.'" (*Id.*).  Scott further alleges that as a result of Bradford's and Mollison's accusations, Lopucki petitioned for and obtained a personal protection order against Scott. (*Id.* at ¶26).

With respect to Defendant Corriveau, a Michigan State Trooper, Scott alleges that, on June 21, 2010, after Scott testified "against" Corriveau in connection with one of his lawsuits against Judge Burress and others, Corriveau "took Plaintiff into custody and then had him booked into the Livingston county Jail where Plaintiff remained until June 22, 2010 when he was released with no criminal charges ever being brought against [him]." (*Id.* at ¶27).  Scott further alleges that Corriveau had no probable cause to believe him guilty of any wrongdoing when he took him into custody at that time. (*Id.* at ¶28).

In their respective motions, Bradford, Mollison, and Corriveau all argue that Scott's claims against them should be dismissed because they are barred by the applicable statute of limitations. (Doc. #23 at 15; Doc. #25 at 13-14; Doc. #30 at 12-13).  The Court finds merit to these arguments.[4]

> 2.  *Scott's Claims Against Bradford, Mollison, and Corriveau are Time-Barred*

Scott's claims against Bradford, Mollison, and Corriveau are brought pursuant to 42 U.S.C. §1983 and §1985.  Although §1983 and §1985 provide remedies for the deprivation of constitutional rights, neither statute prescribes the period within which such claims must be

---

in this Livingston County court proceeding (Case No. 2009-01277601-NA). (Doc. #30 at 10).

[4] Bradford and Mollison also argue (1) that Scott's claims against them are barred by the doctrine of absolute prosecutorial immunity; and (2) that Scott fails to state facially plausible claims against them. (Doc. #23 at 16-24; Doc. #30 at 13-17).  Corriveau also argues that Scott's claims against him are barred by the principles of res judicata. (Doc. #25 at 9-12).  Because the Court recommends dismissal on statute of limitations grounds, it need not reach the merits of these additional arguments.

5

brought. However, 42 U.S.C. §1988 authorizes federal courts to borrow a limitations period from state law for claims under §1983 and §1985.

The Supreme Court has directed federal courts to borrow the forum state's general or residual limitations period for personal injury actions. *See Wilson v. Garcia*, 471 U.S. 261, 276, 280 (1985); *Owens v. Okure*, 488 U.S. 235, 249-50 (1989). Therefore, §1983 and §1985 actions filed in this Court are subject to the three-year limitations period set forth in M.C.L. §600.5805(10). *See Wolfe v. Perry*, 412 F.3d 707, 714 (6th Cir. 2005) (applying M.C.L. §600.5805(10) to a §1983 action); *Havard v. Puntuer*, 600 F. Supp. 2d 845, 856 (E.D. Mich. 2009) (same); *Baker v. Smith*, 72 F. App'x 339, 341 (6th Cir. 2003) (applying M.C.L. §600.5805(10) to a §1985 action). Generally, the statute of limitations begins to run when "the plaintiff knows or has reason to know of the injury which is the basis of the action." *Kuhnle Bros., Inc. v. County of Geauga*, 103 F.3d 516, 520 (6th Cir. 1997) (quoting *Sevier v. Turner*, 742 F.2d 262, 272 (6th Cir. 1984)). *See also Connelly v. Paul Ruddy's Equipment Repair & Service Co.*, 388 Mich. 146, 151 (1972) ("Once all of the elements of an action for personal injury, including the element of damage, are present, the claim accrues and the statute of limitations begins to run.").

Scott's purported claims against Bradford and Mollison accrued on June 17, 2010, the date on which they allegedly made the challenged statements. (Doc. #11 at ¶25). His purported claims against Corriveau accrued on June 21, 2010, when Corriveau allegedly took him into custody without probable cause. (*Id.* at ¶27). Scott does not argue – nor could he – that his claims against these defendants accrued on dates other than these. However, Scott filed this action on June 24, 2013, which he *concedes* was *after* the three-year limitations period expired with respect to these defendants' actions. (Doc. #45 at 6) ("Plaintiff concedes that the date of

filing the Complaint in this matter exceeds three years.").

Scott argues, however, that he is entitled to an equitable tolling of the statute of limitations. In support of this argument, Scott quotes *Graham-Humphreys v. Memphis Brooks Museum of Art, Inc.*, 209 F.3d 552, 560-61 (6th Cir. 2000), for the proposition that "equitable tolling applies only when a litigant's failure to meet a legally-mandated deadline unavoidably arose from circumstances beyond the litigant's control." (Doc. #45 at 6). Scott asserts that because he became ill on June 9, 2013, and purportedly was hospitalized between June 14 and 17, 2013, and because "another matter" unrelated to him at the court's security inspection station on June 21, 2013 prevented him from filing his complaint during business hours on that date (*id.* at 10), he is entitled to equitable tolling. The Court disagrees.

In *Graham-Humphreys*, the very case upon which Scott relies, the Sixth Circuit identified five factors to be considered for the application of equitable tolling: (1) lack of notice of the filing requirement; (2) lack of constructive knowledge of the filing requirement; (3) diligence in pursuing one's rights; (4) absence of prejudice to the defendant; and (5) the plaintiff's reasonableness in remaining ignorant of the particular legal requirement. *Id.* at 561. Yet, Scott does not assert that any of these factors supports his argument for equitable tolling. Instead, he merely asserts that he was ill during a portion of the two weeks immediately preceding the expiration of the limitations period and that an unspecified apparent security issue[5] late in the day at the courthouse on June 21, 2013, caused him to not be able to file his complaint during business hours that day. (Doc. #45 at 6-7, 10, ¶2). This is simply insufficient to invoke equitable tolling.

Scott became aware of his alleged injuries on June 17, 2010 – when Bradford and

---

[5] Scott describes the issue which supposedly delayed his entry into the Court by 20 minutes as simply "another matter unrelated to me." (Doc. #45 at 10, ¶2).

7

Mollison allegedly made false statements about him in court – and on June 21, 2010 – when Corriveau allegedly took him into custody without probable cause. He does not allege that he was unaware of the applicable statutes of limitations (nor could he credibly make this argument, given his extensive litigation history). He offers no explanation for why he chose not to file a complaint at any earlier point in the three years after his claims accrued (particularly when he filed other lawsuits during that time span). Instead, he waited, literally until the last minute, to attempt to file his complaint. He cannot now be heard to complain that he allegedly became ill shortly prior to the deadline.

Scott claims he became ill on June 9, 2013, but did not seek medical treatment until June 14, 2013. (*Id.* at 11, ¶5). However, he offers no explanation for his failure to act in the 1,092 days between his claims' accrual and his June 14, 2013 hospitalization. More importantly, while Scott was discharged from the hospital on June 17, 2013 – the day the statute of limitations expired on his claims against Bradford and Mollison – he delayed at least an additional four days before even attempting to file his complaint against them. Scott's complaint is relatively short with only about ten pages of text. (Doc. #1). Only five of those pages contain factual averments, and of those, only two paragraphs relate specifically to defendants Bradford and Mollison. The few remaining pages of Scott's complaint simply identify the parties and provide five single-sentence conclusory "Counts," in which he simply mentions a cause of action that he claims he has against the defendants. (*E.g., id.* at 10 ("Count I – Retaliation … The actions of defendants as detailed above constitute retaliation…Count II – False Imprisonment … The actions of defendants as detailed above constitute false imprisonment…Count III – Illegal Search and Seizure … The actions of defendants as detailed above constitute unreasonable search and seizure…")). Based on these facts, Scott has not shown entitlement to equitable tolling with

respect to his claims against defendants Bradford and Mollison for the period from June 17, 2013 through June 21, 2013. He knew the deadline and failed to act diligently, both before and after he became ill. *See Graham-Humphreys*, 209 F.3d at 561. With claims that accrued so long ago, it would be prejudicial to Bradford and Mollison to make them wait any longer to confront the issues. Accordingly, Scott's claims against those defendants should be dismissed without regard to the purported June 21, 2013 security issue that allegedly thwarted his attempt to file his complaint that day.

However, because the statute of limitations on Scott's claim against defendant Corriveau expired on Friday, June 21, 2013, the Court must analyze the events of that afternoon at the Theodore Levin U.S. Courthouse. Scott asserts that on that date, at approximately 4:10 p.m., he arrived at the Courthouse to file his complaint. (Doc. #45 at 10, ¶1). He claims that he "was required by the United States Marshal personnel to wait before going through the security checkpoint while they [] dealt with another matter unrelated to [him]." (*Id.* at ¶2). He claims he "was eventually permitted to pass through the security checkpoint and enter the court building at approximately 4:30 p.m." (*Id.*). He claims that he arrived at the Clerk's office at approximately 4:33 p.m., but that a Clerk's staff member named "Devon" told him that the office had just closed and that he would need to return the following Monday, June 24, 2013, to file his complaint, which Scott did. (*Id.* at ¶3). He claims that around the time he filed his opposition to the instant motion (March 17, 2014), he contacted "Devon," and that "Devon" still recalls his attempt to file his complaint on June 21, 2013. (*Id.* at ¶4).

In his reply brief in support of his motion to dismiss, defendant Corriveau ignores Scott's argument about the events of June 21, 2013, and instead characterizes Scott's argument for tolling as being "based only upon his being ill in the two weeks preceding the expiration of the

9

limitations period." (Doc. #51 at 3). While Corriveau is clearly wrong to imply that Scott rests his argument solely on his alleged illness, the Court nevertheless finds that Scott has failed to present sufficient evidence to establish his entitlement to equitable tolling with respect to his claims against Corriveau.

"The party seeking equitable tolling bears the burden of proving he is entitled to it." *Robertson v. Simpson*, 624 F.3d 781, 784 (6th Cir. 2010) (citing *Griffin v. Rogers*, 308 F.3d 647, 653 (6th Cir. 2002)). *See also Engleson v. Unum Life Ins. Co. of America*, 723 F.3d 611, 624 (6th Cir. 2013) (internal citation omitted) ("As equitable tolling is a defense to the assertion that a suit is out-of-time by statute or by contract, the burden of proving entitlement to such a defense falls to the party attempting to invoke it."). Moreover, it is not enough for that party to simply allege circumstances which might support the application of equitable tolling. Rather, to meet his burden he must produce evidence establishing his entitlement to equitable tolling. *See e.g.*, *U.S. v. All Funds Distributed To, or o/b/o Weiss*, 345 F.3d 49, 56 n. 9 (2nd Cir. 2003) ("Where a party fails to marshal factual evidence in support of its equitable tolling argument, we would be inclined to hold that it failed to bear its burden of persuasion that tolling should apply.").

The Court finds analogous decisions of federal courts from across the country in social security cases where the plaintiff missed the statutory filing deadline, and then asserted that the deadline should be equitably tolled because of a delay beyond his control, such as a problem with the mail. In such circumstances, courts have universally held that mere allegations (even if contained in a sworn affidavit) by the plaintiff are insufficient, and that he must produce actual evidence corroborating the circumstances that he claims support equitable tolling. *See e.g., Cook v. Comm'r of Soc. Sec.*, 480 F.3d 432 (6th Cir. 2007); *Kinash v. Callahan*, 129 F.3d 736, 738 (5th Cir. 1997); *Garcia v. Comm'r of Soc. Sec.*, 53 F. App'x 192, 193-94 (3rd Cir. 2002);

*Nichols v. Astrue*, No. 11-124, 2012 U.S. Dist. LEXIS 43363 at *9-12 (D. Nev. Mar. 1, 2012) *adopted by* 2012 U.S. Dist. LEXIS 43364 (D. Nev. Mar. 28, 2012); *Nielson v. Astrue*, No. 10-4647, 2011 U.S. Dist. LEXIS 61506 at *3-5 (N.D. Ill. June 6, 2011); *Pettway v. Barnhart*, 233 F. Supp. 2d 1354, 1356-58 (S.D. Ala. 2002) (collecting cases showing that affidavit alone insufficient); *Marte v. Apfel*, No. 96-9024, 1998 U.S. Dist. LEXIS 8078 at *4-7 (S.D.N.Y. June 3, 1998).[6]

Scott's only "evidence" supporting his argument for equitable tolling is his own self-serving and vague declaration about the events of June 21, 2013, which is clearly insufficient. *Id.* Noticeably lacking from his papers was an affidavit from any court security officer (or Marshal) attesting to the alleged 20-minute delay getting into the Levin Courthouse on the day and time in question. Having failed to meet his burden of providing the Court with actual evidence supporting his entitlement to equitable tolling, his tardy claims against Corriveau should be dismissed.

Finally, even if Scott was not required to marshal the type of evidence mentioned above, the Court would still find that, on the record before it, he has not established his entitlement to equitable tolling. First, the Court notes that the affidavit on which Scott relies is extremely vague. He does not describe the nature (let alone any details) of the "security issue" which supposedly resulted in a 20 minute delay getting into the building. (Doc. #45 at 10, ¶2). Nor does he explain why, despite being a very frequent litigant in the Eastern District of Michigan (and therefore knowledgeable about the Court and its hours[7]), he failed to attempt to use the

---

[6] Scott seemed to recognize his burden in this regard when he referenced a doctor's letter regarding his alleged illness that he *supposedly* (the letter was not actually provided) provided to the Court as Exhibit 1 to his declaration. (Doc. _#45 at 11, ¶ 7).

[7] The Eastern District of Michigan's website indicates very clearly that its Clerk's Office closes at 4:30 p.m. *See* http://www.mied.uscourts.gov/Visiting/hours.cfm (last visited on July 9, 2014)

11

Court's other entrance to ensure he arrived at the Clerk's office on time. (*Id.*). Second, the *Graham-Humphreys* factors, 209 F.3d at 561, favor denying equitable tolling; Scott does not claim that he lacked notice or knowledge of the filing deadline, and, having waited until literally the last minutes of a three-year period of limitations to file his complaint, it certainly cannot be said that he was diligent in pursuing his claims against Corriveau. *Id.* In sum, Scott has failed to meet his burden of establishing that the statute of limitations – which he admits he exceeded – should be equitably tolled. *See Baldwin County Welcome Center v. Brown*, 466 U.S. 147, 151 (1984) ("One who fails to act diligently cannot invoke equitable principles to excuse that lack of diligence."). Accordingly, Scott's claims against Corriveau are time-barred and should be dismissed.

### D. Conclusion

For the foregoing reasons, **IT IS RECOMMENDED** that Defendant Bradford's Motion for Judgment on the Pleadings [**23**], Defendant Corriveau's Motion to Dismiss [**25**], and Defendant Mollison's Motion for Judgment on the Pleadings [**30**] be GRANTED.

Dated: July 10, 2014                             s/ David R. Grand
                                                 DAVID R. GRAND
                                                 UNITED STATES MAGISTRATE JUDGE

### NOTICE TO THE PARTIES REGARDING OBJECTIONS

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. §636(b)(1) and Fed. R. Civ. P. 72(b)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *See Thomas v. Arn*, 474 U.S. 140

---

("the Clerk's Office is open from 8:30 a.m. to 4:30 p.m. Monday through Friday…").

(1985); *Howard v. Secretary of HHS*, 932 F.2d 505, 508 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947, 949–50 (6th Cir. 1981).  The filing of objections which raise some issues, but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation.  *See Willis v. Secretary of HHS*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to E.D. Mich. L.R. 72.1(d)(2), a copy of any objections is to be served upon this magistrate judge.

### CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on July 10, 2014.

s/Eddrey O. Butts
EDDREY O. BUTTS
Case Manager