UNITED STATES DISTRICT COURT
EASTERN DISTICT OF MICHIGAN
SOUTHERN DIVISION

DAVID J. SCOTT,

                    Plaintiff,          Civil Action No. 13-cv-12781
                                            Honorable Linda V. Parker
          v.                                  Magistrate Judge David R. Grand

MARILYN BRADFORD, WILLIAM
MOLLISON, CHRISTOPHER CORRIVEAU,
MARTIN BAY, D. BISHOP, OAKLAND
COUNTY DEPUTY, and HOWELL POLICE OFFICER,

                    Defendants.
_____/

### REPORT AND RECOMMENDATION TO GRANT DEFENDANTS' MOTION FOR INJUNCTIVE RELIEF ENJOINING PLAINTIFF FROM FUTURE LITIGATION [46]

**I.    RECOMMENDATION**

Before the Court for a report and recommendation is Defendant Marilyn Bradford's Motion for Injunctive Relief Enjoining Plaintiff from Future Litigation. [46]. For the following reasons, the Court RECOMMENDS that Defendant Bradford's motion be GRANTED.

**I.    REPORT**

    **A.    Background**

Plaintiff David Scott has been an extremely frequent litigant in Michigan state and federal courts. Scott's history of litigation is replete with vexatious, harassing, and duplicative lawsuits. Defendant Bradford provided docket sheets which reveal that Scott has filed nearly fifty lawsuits in the United States District Courts for the Eastern and Western Districts of Michigan, more than fifty appeals in the Sixth Circuit Court of Appeals, and some twenty-six actions in the 44th District Court of Livingston County, Michigan. [46 at 13-14, Ex. B, C]. By

Scott's own admission, "literally all but a couple lawsuits filed by Plaintiff relate to mistreatment he suffered brought on by the false accusations of him being violent and intending to kill Daniel BurressG [sic]." [55 at 5]. Since the year 2000, Scott has filed seventeen complaints in the Eastern District of Michigan alone.[1] It appears that Scott prevailed only once in these seventeen cases, against a single defendant, by way of default judgment. *See Scott v. Cartensen,* No. 03-cv-75069 (E.D. Mich. Sep. 28, 2009) (entering a default judgment against defendant G. Williams for failure to respond following alternate service of process). In each of the other matters, Scott's claims were dismissed, voluntarily withdrawn, or otherwise had an outcome unfavorable to him.

On October 9, 1997, Circuit Judge William E. Collette of the Livingston County Circuit Court entered a pre-filing injunction against Scott. *Scott v. Michigan Dep't of Corrections*, Case No. 97-15667-AA, Op. & Order. [46-5]. More specifically, Judge Collette ordered that "[Scott] is barred from filing any future law suits in any Michigan Circuit Court or any Michigan Court of Claims Court without first seeking and obtaining permission from Chief Circuit Judge and Court of Claims Judge Peter D. Houk. This is due to [Scott's] repeated and consistent filing of frivolous suits." *Id.*

Scott has also previously been sanctioned in the Eastern District. In 2012, Scott was sanctioned by the Honorable Arthur J. Tarnow for lodging claims that were found to be

---

[1] *See Scott v. Brennan, et al.*, No. 10-cv-14176 (E.D. Mich. 2010); *Scott v. Stone, et al.*, No. 10-cv-11078 (E.D. Mich. 2010) ; *Scott v. Burress, et al.*, No. 09-cv-11807 (E.D. Mich. 2009); *Scott v. Cremonte, et al.*, No. 09-cv-10916 (E.D. Mich. 2009); *Scott v. Stone, et al.*, No. 09-cv-12129 (E.D. Mich. 2009); *In re Scott*, No. 07-cv-15472 (E.D. Mich. 2007); *Scott v. Burress, et al.*, No. 06-cv-13916 (E.D. Mich. 2006); *Scott v. Wenzel, et al.*, 05-cv-70018 (E.D. Mich. 2005); *Scott v. Freed, et al.*, No. 04-cv-70714 (E.D. Mich. 2004); *Scott v. Babik, et al.*, 04-cv-70256 (E.D. Mich. 2004); *Scott v. Stone, et al.*, No. 03-cv-75123 (E.D. Mich. 2003); *Scott v. Cartensen*, No. 03-cv-75069 (E.D. Mich. 2003); *Scott v. Mondhank*, No. 02-cv-75116 (E.D. Mich. 2002); *Scott v. Lang, et al.*, No. 02-cv-74506 (E.D. Mich. 2002); *Scott v. Martin, et al.*, No. 02-cv-72302 (E.D. Mich. 2002); *Scott v. Evans, et al.*, No. 01-cv-10274 (E.D. Mich. 2001).

"frivolous, malicious, and without merit," and he was required to pay attorney's fees and costs to Defendants Burress, Cremonte, Leslie, and Vailliencourt. *Scott v. Burress*, No. 10-cv-14937, 2012 WL 1068704 at *6-8 (E.D. Mich. Mar. 29, 2012), *aff'd* (Jan. 8, 2014), *reconsideration denied*, 2012 WL 1478956 (E.D. Mich. Apr. 27, 2012).[2] Judge Tarnow noted that Scott had filed nearly 160 actions and appeals in Michigan state and federal courts, and surveyed nine cases in the Eastern and Western Districts of Michigan in which Scott's actions were found to be frivolous and/or malicious, Scott was refused *in forma pauperis* status, or was required to pay the costs of the defendants.[3] *Id.* at *7. Judge Tarnow also noted Scott's *modus operandi* of filing

---

[2] Scott appealed the dismissal of his action to the United States Court of Appeals for the Sixth Circuit, which affirmed Judge Tarnow's decision on January 8, 2014 without discussion of the sanctions. *Scott v. Burress*, No. 12-cv-1723 (6th Cir. Jan. 8, 2014).

[3] Judge Tarnow stated in his order:

> This Court has also independently reviewed the docket Eastern Districts of Michigan and found numerous cases in which Plaintiff's cases have been dismissed as frivolous and/or malicious, in which Plaintiff has been refused *in forma pauperis* status, and in which Scott has been required to pay the costs of the defendants. These cases include: *Scott v. Rumsey, et al.*, Case No. 91-cv-00138 (W.D. Mich. 1991) (dismissed as frivolous); *Scott v. Johnson, et al.*, Case No. 95-cv-00403 (W.D. Mich. 1995) (dismissed as frivolous), *aff'd*, 1997 WL 133317 (6th Cir. 1997) (affirmed as frivolous); *Scott v. Hinton*, Case No. 97-cv-72900 (E.D. Mich. 1997) (dismissed as frivolous); *Scott v. Evans, et al.*, Case No. 01-cv-10274 (E.D. Mich. 2001) (*in forma pauperis* status revoked because of previous three strikes, summary judgment ultimately granted against plaintiff), *aff'd*, Case No. 06-1799 (6th Cir. 2007); *Scott v. Martin, et al.*, Case No. 02-cv-72302 (E.D. Mich. 2002) (revoking *in forma pauperis* status, finding Plaintiff's claims frivolous, dismissing case, and denying *in forma pauperis* appeal); *Scott v. Stone, et al.*, Case No. 03-cv-70523 (E.D. Mich. 2003) (*in forma pauperis* inadvertently granted and later revoked, case dismissed under "three strikes provision"); *Scott v. Freed, et al.*, Case No. 04-70714 (E.D. Mich. 2004) (*in forma pauperis* status revoked, dismissed under "three strikes" rule, defendants ultimately granted summary judgment); *Scott v. Wenzel, et al.*, Case No. 05-cv-70018 (E.D. Mich. 2005) (*in forma pauperis* denied, case dismissed under "three strikes" provision), *aff'd*, Case No. 05-1797 (6th Cir. 2006); *Scott v. Stone, et al.*, Case No. 09-cv-12129 (E.D. Mich. 2009) (requiring plaintiff to pay filing fees, requiring plaintiff to pay costs of voluntarily dismissed previous case because of refiling on same

frivolous suits against government officers, then justifying later lawsuits on the basis of alleged retaliation for filing the prior suits. *Id.* at *6.[4]

The instant action repeats that pattern.  It arises out of a series of incidents between October 24, 2009 and July 18, 2012 in which Scott alleges he was harassed, falsely imprisoned, and subjected to retaliation, cruel and unusual punishment, and illegal search and seizure by the Defendants. [1].  On June 24, 2013, Scott filed a complaint against Marilyn Bradford, William Mollison, Christopher Corriveau, Martin Bay, D. Bishop, "Oakland County Deputy" (later identified as L. Lacey and T. Branderver) and "Howell Police Officer" (later identified as C. Kobel). [1, 11].

On August 15, 2014, the Honorable Linda V. Parker granted Defendant Corriveau's motion to Dismiss [23] and Motions for Judgment on the Pleadings from Defendant Bradford [23] and Defendant Mollison [30]. [67].  Scott's claims against Defendants Bay, Kobel, Lacey, and Branderver were dismissed without prejudice on September 9, 2014.  [69].  On September 23, 2014, this Court recommended dismissal of Scott's amended complaint and his claims against the final remaining defendant, D. Bishop, which Judge Parker adopted on October 22, 2014.  [72].

Before the foregoing motions were decided, Bradford filed the Motion for Injunctive

---

day as dismissal, judgment for defendants at jury trial), *aff'd*, Case No. 11-1003 (6th Cir. 2012).

*Scott v. Burress, et al.*, No. 10-cv-14937, 2012 WL 1068704 at *11-12 (E.D. Mich. Mar. 29, 2012).

[4] Some of the defendants in that case had requested a prefiling injunction against Scott as a result of his vexatious behavior.  Although Judge Tarnow ultimately declined to enter such an injunction, he nevertheless concluded that "[t]his Court undoubtedly possesses the discretion to enjoin Plaintiff from filing lawsuits without leave of the court.  However, the court does not believe such a drastic remedy is needed at this time." *Id.* at *7 (internal citation omitted).

Relief Enjoining Plaintiff from Future Litigation that is the subject of this Report and Recommendation. [46]. Bradford argues that Scott's current action represents the latest in a long line of frivolous and vexatious lawsuits, for which Scott has been sanctioned in both Michigan state court and this court. [*Id*. at 14; 18]. Bradford asserts that these sanctions have failed to stem the flow of Scott's vexatious filings, and that only a pre-filing injunction will sufficiently protect her and the court from further abusive conduct. [46 at 13]. Scott responds, *inter alia*, that Defendant Bradford has failed to demonstrate that he acted frivolously or with the intent to harass. [55 at 4-5]. Scott further argues that his proclivity for filing lawsuits is a product of the harassment he has suffered at the hands of various defendants and courts, rather than any intent to harass on his part. [*Id.*].

B. ANALYSIS

1. *Applicable Legal Standards*

As Judge Tarnow noted, the court "undoubtedly possesses the discretion to enjoin Plaintiff from filing lawsuits without leave of the court." *Scott v. Burress*, 2012 WL 1068704 at *7 (E.D. Mich. Mar. 29, 2012); *see also Wrenn v. Vanderbilt Univ. Hosp.*, 50 F.3d 11 at *3 (6th Cir. 1995) (holding that authority to enjoin vexatious litigants arises out of the inherent authority of federal courts and the All Writs Act, 28 U.S.C. § 1651(a)); *Cotner v. Hopkins*, 795 F.2d 900, 902 (10th Cir. 1986) (noting the inherent power of federal courts to "impose carefully tailored restrictions" upon "abusive litigants").[5] Moreover, courts have the "constitutional obligation to

---

[5] While enjoining a vexatious litigant is perhaps best described as a sanction, the power to enjoin is not derived from Fed. R. Civ. P. 11. Properly enjoined litigants will often be in violation of Rule 11, but a violation of that rule is not necessary to find that an injunction is proper. *See Kissi v. Clement*, No. 08-cv-1784, 2008 WL 7526326 at *5 (N.D. Ohio Oct. 3, 2008) (enjoining litigants without a discussion of sanctions); *Neshewat v. Salem*, 365 F. Supp. 2d 508, 529 (S.D.N.Y. 2005) *aff'd*, 194 F. App'x 24 (2d Cir. 2006) (analyzing whether to apply sanctions and injunctive relief separately). Thus, while the propriety of other sanctions should be considered

5

protect their jurisdiction from conduct which impairs their ability to carry out Article III functions." *In re Martin-Trigona*, 737 F.2d 1254, 1261 (2d Cir. 1984). "[T]he right of access to the courts is neither absolute nor unconditional." *Tripati v. Beaman*, 878 F.2d 351, 353 (10th Cir. 1989). However, a plaintiff cannot be "absolutely foreclosed from initiating an action in a court of the United States, though it is permissible to require one who has abused the legal process to make a showing that a tendered lawsuit is not frivolous or vexatious before permitting it to be filed." *Ortman v. Thomas*, 99 F.3d 807, 811 (6th Cir. 1996). "Litigiousness alone will not support an injunction against filing future lawsuits." *Austin v. U.S. Postal Serv.*, 758 F.2d 652 at *2 (6th Cir. 1985). Rather, an injunction is proper "where the litigant's abusive and lengthy history is properly set forth." *Landrith v. Schmidt*, 732 F.3d 1171, 1174 (10th Cir. 2013) (quoting *Tripati*, 878 F.2d at 353); *see also De Long v. Hennessey*, 912 F.2d 1144, 1148 (9th Cir. 1990) (noting that both the amount and content of filings are relevant to this inquiry). Legitimate claims deserve a full and fair hearing, but repeated litigation that abuses the judicial process must be curtailed. "The proper method for handling the complaints of prolific litigators" is to require them to seek leave of the court before filing further complaints. *See Filipas v. Lemons*, 835 F.2d 1145, 1146 (6th Cir. 1987); (*Feathers v. Chevron U.S.A., Inc.*, 141 F.3d 264, 269 (6th Cir. 1998) (noting that there is "nothing unusual about imposing prefiling restrictions in matters with a history of repetitive or vexatious litigation").

### 2. *Appropriateness of Injunctive Relief*

To determine whether a pre-filing injunction is appropriate, the Court considers:

---

when determining whether enjoining a litigant is necessary, the power to enjoin is not tied to the power to issue sanctions under Rule 11. Defendant Bradford notes that the Court has the power to sanction Scott under Fed. R. Civ. P. 11, but also asks that the Court use its inherent powers to enjoin Scott. [46 at 2]. Because the Court's power to enjoin Scott's conduct is not reliant upon Rule 11, the Court will refrain from analyzing whether Scott violated Rule 11.

> (1) the litigant's history of litigation and in particular whether it entailed vexatious, harassing or duplicative lawsuits;
>
> (2) the litigant's motive in pursuing the litigation, *e.g.*, does the litigant have an objective good faith expectation of prevailing?;
>
> (3) whether the litigant is represented by counsel;
>
> (4) whether the litigant has caused needless expenses to other parties or has posed an unnecessary burden on the courts and their personnel; and
>
> (5) whether other sanctions would be adequate to protect the courts and other parties.
>
> Ultimately, the question the court must answer is whether a litigant who has a history of vexatious litigation is likely to continue to abuse the judicial process and harass other parties.

*Adams v. Wilimington Fin./AIG*, 12-cv-10308, 2012 WL 2904776 at *3 (E.D. Mich. May 30, 2012) *report and recommendation adopted sub nom*, *Adams v. Springleaf Fin. Serv./AIG*, 12-cv-10308, 2012 WL 2905279 (E.D. Mich. July 16, 2012) (quoting *Tropf v. Fid. Nat. Title Ins. Co.*, 289 F.3d 929, 940 n.18 (6th Cir. 2002); *see also Soulliere v. Maxwell*, No. 07-cv-10694, 2007 WL 1018220 at *1-2 (E.D. Mich. Apr. 2, 2007)). Analysis of these factors here weighs strongly in favor of a pre-filing injunction; indeed, as discussed below, Scott has expressly answered in the affirmative the question of whether he "is likely to continue to abuse the judicial process and harass other parties."

### a. *Scott has a Lengthy History of Filing Vexatious, Harassing, or Duplicative Lawsuits*

As set forth above, Scott has engaged in a decades-long pattern of litigation surrounding the same issues, filing nearly 160 suits across Michigan state and federal courts. Despite repeated warnings, he has persisted in filing time barred suits, failing to serve defendants for whom a summons has been issued, and other vexatious and harassing behavior.

7

> b.  *Significant Evidence Exists Showing that Scott's Motive for Pursuing the Instant Litigation Was to Harass the Defendants*

The second factor the Court must consider is Scott's "motive in pursuing the litigation." Although the *Tropf* court suggested that motive could be evaluated by reference to whether the litigant had an "objective good faith expectation of prevailing," that was only one example of what the Court should consider. Here, although the Court did not weigh the merits of Scott's claims (because it recommended dismissing them based on a finding that the statute of limitations had run as to certain defendants and that Scott had failed to prosecute his claims against others), ample evidence shows that Scott's motive in bringing this action was to continue his abusive, harassing litigation tactics.

In this action, Scott was provided with summonses for Defendants Kobel, Lacey, and Branderver, which he failed to serve (after twice moving for and receiving extensions of time to accomplish service) and permitted to expire. [6; 7; 8; 15; 66 at 2-3]. Scott was ordered to show cause why the action against Defendants Kobel, Lacey, and Branderver should not be dismissed, but he failed to respond, and those defendants were subsequently dismissed. [*Id*. at 3]. Similarly, his claim against Defendant Bay was dismissed after Scott failed to accomplish service despite two extensions of time. [69]. Thus, suing these defendants was not just a waste of Scott's time, but a waste of the Court Clerk's time, and this Court's time as it required the dedication of scarce resources that could have been devoted to other litigants' cases.

Scott's claims against Defendants Bradford, Corriveau, and Mollison were dismissed as barred by the statute of limitations. [64 at 7]. Importantly, however, Scott exceeded the applicable three-year statute of limitations because he waited until the very end of that period to even *attempt* to file his complaint. [64 at 6-12]. As the Court explained in its prior Report and Recommendation, Scott offered no legitimate reason for the untimeliness of his complaint. [*Id.*].

Indeed, particularly when coupled with Scott's post-filing behavior, these circumstances support the conclusion that Scott filed this action not because he wants his "day in court" [55 at 6], but in order to continue his harassment of others.

Scott's claim against Defendant D. Bishop was dismissed per this Court's recommendation on October 22, 2014. [72]. Scott failed to respond to Bishop's motion to dismiss, despite clear warnings from this Court that failure to respond would result in sanctions, potentially including the dismissal of his case. In recommending dismissal of Scott's claim against Bishop, this Court recognized Scott's "clear pattern of delay," which prejudiced Bishop and weighed heavily in favor of dismissing Scott's claim. [70 at 4]. Again, Scott's behavior – suing Bishop, leaving a lawsuit hanging over Bishop's head for a period of time, forcing Bishop to file a dispositive motion, and then failing to even respond to that motion – suggests that the claim was filed for an improper purpose.

In his 2012 action before Judge Tarnow, Scott filed suit against Defendant Steinaway despite the claim being clearly barred by the statute of limitations; Scott subsequently failed to respond to Steinaway's motion to dismiss. *Scott v. Burress*, 10-14937 (E.D. Mich) [54]. Scott has been provided ample opportunities to have his claims fairly adjudicated, which he has repeatedly squandered, causing unnecessary burden to Defendant Bradford and various other litigants.

The Court also notes that, rather than discussing the merits of Defendant Bradford's motion, Scott uses the majority of his response to baldly assert that "it is undisputed that . . . [he] has been severely mistreated under color of state law, including being falsely arrested and imprisoned" and that he "has never had his day in court as to the malicious and false accusations of him being a violent person and the consequences of those actions." [55 at 1]. Scott also

9

alleges in his response that Judge William Collette of the Ingham County Circuit Court acted in bad faith in issuing a pre-filing injunction, and that Livingston County public defender Mark Gatesman attempted to "setup [sic] Plaintiff on additional criminal charges" while representing Scott. [*Id*. at 3]. Scott also used his response to mischaracterize the pre-filing injunction issued by Judge Collette as having "outright banned Plaintiff from filing actions in state court." [*Id*. at 3].

More relevantly, Scott asserts that:

> Defendant's argument is based solely on vague generalities and misstatements of material fact. She provides not one shred of reliable evidence that Plaintiff ever instituted litigation without a good faith belief it had merit. She fails to identify even one case filed by Plaintiff that was truly frivolous for purposes of harassment.

[*Id*. at 5-6.] But this argument merely shows that Scott misapprehends the significance of his behavior and its negative impact on others and the Court. It is immaterial whether Scott harbored an irrational, yet subjective good-faith belief that he was likely to prevail in this action or his prior suits. Instead, courts look to whether a litigant has an objective basis for believing they are likely to prevail. *See Brooks v. Whirlpool Corp.*, 10-cv-01098-JDB, 2011 WL 3684774 at *2 (W.D. Tenn. Aug. 23, 2011) (citing *Tahfs v. Proctor*, 316 F.3d 584, 594 (6th Cir.2002)). Scott presented no argument which could serve as the grounds for an objective good faith belief that he would prevail in this action.

Furthermore, Defendant Bradford presented ample evidence of Scott's frivolous conduct by reference to Judge Tarnow's order in *Scott v. Burress*, 2012 WL 1068704, in which Scott's lawsuit was found "frivolous, malicious, and without merit," his history of frivolous suits was set forth, and sanctions were issued accordingly.

Scott also argues that he has engaged in a large number of lawsuits as a result of "appeals

from bogus misconduct charges" and the "mistreatment he suffered brought on by the false accusations of him being violent." [55 at 4-5]. Again, whatever subjective beliefs Scott may hold regarding the merits of his cases, he has repeatedly filed lawsuits which he had no objective good faith expectation of winning and/or which he simply ignored after forcing the Court and those he sued to spend resources addressing his claims and filings. As discussed above, Scott has been warned and sanctioned for that behavior several times.

### c. Scott's Pro Se Status is Largely Immaterial

That Scott has acted *pro se* in the instant action is not sufficient to offset the overwhelming evidence that an injunctive sanction is appropriate. Scott has accrued substantial experience throughout several decades of litigation, has been repeatedly warned and sanctioned for his frivolous filings, and demonstrates sufficient understanding of court rules to comprehend the vexatious nature of his filings. *See Scott v. Burress*, 06-13916, 2009 WL 2602395 at *1 (E.D. Mich. Aug. 24, 2009) (noting Scott's substantial litigation experience in 2009, which he has only bolstered since that date).

### d. Scott has Caused Needless Expenses to Other Parties and has Posed an Unnecessary Burden on the Court

Scott's actions have created unnecessary burdens on the court and needless expense for the various defendants. For example, in June 2009, Scott voluntarily dismissed an action after a jury was impaneled, only to re-file his case later the same day. *Scott v. Stone, et al.*, 09-cv-12129 (E.D. Mich. Nov. 17, 2009). No explanation was given for why Scott was unprepared for the trial, nor why he re-filed the suit on the same day; Scott was assessed costs per Fed. R. Civ. P. 41(d) and the case was stayed. Scott paid those costs, and the case was reopened. A jury trial was held in November 2010; the defendants prevailed on all counts. *Scott v. Stone, et al.*, 09-cv-12129 (E.D. Mich. Nov. 17, 2010). Furthermore, as noted *supra*, Scott has also repeatedly filed

11

time barred lawsuits, forcing various defendants to incur expenses responding to his meritless accusations.

### e. No Lesser Sanction than a Pre-Filing Injunction Will Adequately Protect Other Litigants and the Court from Scott's Abusive Conduct

Neither the state court order enjoining Scott nor the monetary sanctions imposed by Judge Tarnow have been sufficient to stem Scott's abusive conduct. On the contrary, Scott has demonstrated throughout his history of litigation, including in the instant action, that he will continue to engage in behavior that is designed to waste the resources of the court and other parties if given the opportunity to do so. Indeed, Scott expressly advises that:

> The present case represents only the tip of the iceberg. As this case shows, the poisoning of people against [Scott] has spread beyond the jurisdiction of Livingston County that includes having now spread into Oakland County . . . . **This vicious circle will only continue until [Scott] gets his day in court** and those responsible are finally held accountable.

[55 at 6] (emphasis added). In other words, Scott has made clear that the court and other litigants can expect more of the same from him in the future. This supports the need for a pre-filing injunction.

So does the fact that other sanctions have not deterred Scott. For reasons unknown to the Court, Scott asserts that Judge Tarnow "never imposed any sanctions against [him]" and that "[he] can only assume that the Judge essentially developed a change of heart as to . . . Plaintiff's claim and the frivolousness of the same." [55 at 1-2]. The record, however, demonstrates that Judge Tarnow did in fact impose sanctions against Scott. Even assuming that Scott was never pursued by the defendants in that case or the court for failing to pay the sanctions ordered by Judge Tarnow, these circumstances strengthen the argument for a pre-filing injunction, as it demonstrates that Scott has ignored, and not been deterred by, the threat of lesser sanctions, and

has abused the clemency of the court.

Scott will clearly not be deterred by additional monetary sanctions; only a pre-filing injunction will adequately protect the court, Defendants, and other potential targets of Scott's ire from further vexatious litigation initiated by him.

It is worth highlighting that such an injunction would not prevent Scott from accessing the court to pursue any legitimate claims he may have. Rather, he would simply first need to seek leave of court before filing any new complaint. While this may entail an extra step of work for the court, given Scott's track record discussed above, the savings to the legal system as a whole may be significant. Thus, the recommended injunction strikes the appropriate balance between conserving judicial resources, protecting the rights of other litigants, and protecting Scott's right to legitimate access to the court.

### f. *Summary of the Five Factors*

In sum, four of the five factors weigh heavily in favor of enjoining the Scott, and the fifth – Scott's *pro se* status – is fairly negligible in light of his history as an experienced litigant. Scott's lengthy history of vexatious, harassing, and duplicative lawsuits is well documented, and despite being warned and sanctioned for this behavior on multiple occasions, his improper litigation conduct has continued, and (as Scott has made clear) will continue in the future. Thus, the Court concludes that Scott should be enjoined from filing any new action in the Eastern District of Michigan without first applying for and obtaining leave of the court. *See e.g. Tropf*, 289 F.3d at 940; *Ortman*, 99 F.3d at 811; *Feathers*, 141 F.3d at 269; *Callihan v. Commonwealth of Ky.*, 36 Fed. Appx. 551, 553 (6th Cir.2002). Scott should also be required to attach a copy of this Report and Recommendation to any such application.

## C.  CONCLUSION

For the foregoing reasons, the Court **RECOMMENDS GRANTING** Defendant Bradford's Motion for Injunctive Relief [46].

The Court further **RECOMMENDS ORDERING** that plaintiff David J. Scott **BE ENJOINED** from filing any new action in the Eastern District of Michigan **WITHOUT FIRST APPLYING FOR AND RECEIVING A COURT ORDER AUTHORIZING THE FILING OF SUCH LAWSUIT.**  The Court further **RECOMMENDS** that Scott be required to include a copy of this Report and Recommendation with any such application.

Dated: October 31, 2014                              s/David R. Grand
Ann Arbor, Michigan                                  DAVID R. GRAND
                                                     United States Magistrate Judge

### NOTICE TO THE PARTIES REGARDING OBJECTIONS

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and Fed.R.Civ.P. 72(b)(2).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Secretary of HHS*, 932 F.2d 505, 508 (6th Cir.1991); *United States v. Walters*, 638 F.2d 947, 949–50 (6th Cir.1981).  The filing of objections which raise some issues, but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation.  *Willis v. Secretary of HHS*, 931 F.2d 390, 401 (6th Cir.1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir.1987).  Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this magistrate judge.  A party may respond to another party's objections within 14 days after being served with a copy.

*See* Fed. R. Civ. P. 72(b)(2); 28 U.S.C. §636(b)(1). Any such response should be concise, and should address specifically, and in the same order raised, each issue presented in the objections.

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record via email addresses the court has on file.

                                                                       s/Eddrey O. Butts
                                                                       EDDREY O. BUTTS
                                                                       Case Manager

Dated: October 31, 2014